# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MATTHEW, S.[1]**, | Case No. 6:24-cv-30-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MICHELLE KING,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin C. Danielson, Executive Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jennifer Forsyth, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Matthew S. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Plaintiff's application for

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the following reasons, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on September 10, 2018, alleging a disability onset date of July 18, 2018. AR 65-66, 79-80. Plaintiff's date of birth is April 22, 1979, and he was 39 years old as of the alleged disability onset date. AR 65. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 77, 91, 103-04, 113-14, 135-36. Plaintiff initially appeared for a hearing before ALJ B. Hobbs on December 20, 2022. AR 32. On January 3, 2023, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-25. Plaintiff requested the Appeals Council review the ALJ's decision. AR 276-77. On November 7, 2023, the Appeals Council denied Plaintiff's request for review. AR 1. Accordingly, the ALJ's decision became the final agency decision from which Plaintiff now seeks review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC").

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As a preliminary step to Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through March 31, 2023. AR 17. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 18, 2018. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: right foot abnormality, obesity, severe obstructive sleep apnea, anxiety, and obsessive-compulsive disorder ("OCD") *Id.* At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ next determined Plaintiff's RFC. The ALJ found that Plaintiff could perform light work as defined in 20 CFR 404.1567(b), with the following limitations:

> [Plaintiff] can occasionally lift and carry up to 20 pounds. [Plaintiff] can frequently lift and carry up to 10 pounds. [Plaintiff] can push and pull the same as he can lift and carry. [Plaintiff] can stand or walk up to four hours a day, and he can sit up to four hours a day. He can occasionally climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can understand, remember, and carryout simple and routine instructions. [Plaintiff] can frequently interact with coworkers, supervisors, or the public.

AR 20.

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a kitchen helper, baker, and bagger. AR 23. At step five, relying on testimony of a vocational expert, and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 24. These jobs included small parts assembler (16,094 jobs in the national economy), marker (136,785 jobs in the national economy), and electrical accessories assembler (8,287 jobs in the national economy). AR 24-25. The ALJ thus concluded that Plaintiff was not disabled. AR 25.

**DISCUSSION**

Plaintiff asserts that the ALJ erred by (1) failing to fully and fairly develop the record regarding the limiting effects of Plaintiff's OCD by not ordering a psychological evaluation; (2) discounting the treating medical opinion of Dr. William Goodger, M.D.; and (3) improperly discrediting Plaintiff's subjective symptom testimony. The Court addresses each argument in turn.

**A.  Duty to Develop the Record**

Plaintiff argues that the record required further development because K. Balle, D.O.,

opined that Plaintiff's OCD appeared to be "a chronic problem," and that he would need "further

psychiatric evaluation to assess this claim on Social Security." AR 434. Plaintiff explains that to

remedy this issue, Plaintiff's counsel asked the ALJ to order a psychological evaluation to fully

and fairly develop the record, however, the ALJ denied this request. AR 405. The Commissioner

responds that the ALJ's duty to develop the record was not triggered because the evidence in this

case was not ambiguous or inadequate to allow the ALJ to evaluate the limiting effects of

Plaintiff's OCD. *See, e.g.*, *Agadzhanyan v. Astrue*, 357 F. App'x 148, 150 (9th Cir. 2009)

(finding that the ALJ was not required to order a psychological evaluation "because he did not

find any piece of evidence to be ambiguous or difficult to interpret") (citing *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). The Court agrees.

Although Plaintiff is ultimately responsible for providing sufficient medical evidence of a

disabling impairment, "the ALJ has a special duty to develop the record fully and fairly and to

ensure that the claimant's interests are considered, even when the claimant is represented by

counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's duty to further

develop the record, however, is triggered only when the evidence is ambiguous, when the ALJ

finds that the record is inadequate for a proper evaluation of the evidence, or when the ALJ relies

on an expert's conclusion that the evidence is ambiguous. *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005); *Tonapetyan*, 242 F.3d at 1150. "The ALJ may discharge this duty in several

ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's

physicians, continuing the hearing, or keeping the record open after the hearing to allow

supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. An ALJ may need to order a

consultative examination in order to have a fully and fairly developed record in some cases,

including "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination" or where "additional evidence needed is not contained in the records of [the claimant's] medical sources." 20 C.F.R. §§ 404.1519a(b), 416.9191(b); *see also Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (relying on the previous version of 20 C.F.R. §§ 404.1519a(b) and 416.919a(b)).

In *Ford v. Saul*, the Ninth Circuit concluded that the ALJ did not have a duty to re-contact physicians to develop the record because the evidence was neither ambiguous nor insufficient. 950 F.3d 1141, 1156 (9th Cir. 2020). This was because "the ALJ had years of [the plaintiff's] mental health records and multiple opinions from non-examining psychiatrists to inform [the ALJ's] decision . . . ." *Id.* Similarly, in *McLeod v. Astrue*, the Ninth Circuit reasoned that "substantially all of [the physicians'] medical records throughout the time they treated [the plaintiff] were before the ALJ," providing sufficient information for the ALJ to render a decision. 640 F.3d 881, 884 (9th Cir. 2011); *see also Carson v. Comm'r of Soc. Sec.*, 2020 WL 5039255, at *5 (E.D. Cal. Aug. 26, 2020) (finding that the ALJ's duty to develop the record was not triggered when there existed "abundant medical evidence in the record, including treatment notes and multiple opinions from both examining and non-examining psychiatrists").

This case is analogous to both *Ford* and *McLeod*. Like in *Ford* and *McLeod*, the ALJ in this case had access to Plaintiff's relevant physical and mental health records through the alleged disability onset date. AR 411-662. The agency consultants found Plaintiff's OCD non severe, AR 72, 86, 99, 109, but the ALJ found that determination to be inconsistent with the record as a whole. AR 23. The ALJ instead found Plaintiff's OCD to be severe, AR 17, and explicitly stated that the record as a whole warrants some mental limitations that were not assessed previously by the agency consultants. AR 23. In analyzing Plaintiff's OCD symptoms, however, the ALJ cited

multiple treatment records indicating that Plaintiff's OCD was managed well with medication or that he otherwise appeared in good mental health. AR 22-23 (citing AR 463, 474, 485-86, 497-98, 631, 659-62). Substantial evidence supports this conclusion by the ALJ. For example, at his medical consultative exam, Plaintiff stated that his OCD is controlled with medication, and he was able to work with it in the past. AR 394. Other medical providers also described Plaintiff's OCD as "stable" and "[w]ell managed long-term on paroxetine." AR 421, 645, 662. Plaintiff stated that his OCD symptoms have mild to moderate impacts on his functioning. AR 489, 501, 506.

The ALJ also specifically addressed Plaintiff's very brief counseling treatment for his OCD. AR 22 (citing AR 485-507). The ALJ discussed how Plaintiff attended counseling at the Eugene Center for Anxiety and Stress because his attorney recommended he do so for his case. *Id.* (citing AR 487-88). The ALJ also noted that Plaintiff was let go from treatment after only one month. AR 22 (citing AR 506). Plaintiff's discharge note from the Eugene Center for Anxiety and Stress indicates "[Plaintiff] reported that although he continues to have frequent obsessive thoughts, he is able to refrain from engaging in compulsive behaviors throughout the day." AR 506. Plaintiff explained that he "developed his own internal coping strategies [to] disengage from intrusive thoughts and resist the urge to spend excessive amounts of time compulsively counting and rearranging objects at home." *Id.* When asked if he is motivated to engage in exposure practices to address his OCD, Plaintiff stated that he "does not feel like this is necessary for his OCD symptoms." *Id.* When Plaintiff was informed that establishing goals for treatment is necessary in order to proceed with weekly counseling sessions, Plaintiff was unable to identify counseling goals. *Id.* As pointed out by the ALJ, Plaintiff then agreed to terminate counseling "due to a lack of counseling goals" AR 506-07.

It was reasonable for the ALJ to determine that the record was adequately developed regarding Plaintiff's OCD. Thus, the ALJ's conclusion that a psychological examination was not necessary to evaluate the limiting effects of Plaintiff's OCD was not erroneous.

## B.  Medical Opinion Evidence

### 1.  Standards

Plaintiff argues that the ALJ erred in finding Dr. Goodger's opinion unpersuasive. Plaintiff filed his application for benefits on September 10, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 2. Analysis

On October 26, 2022, Dr. Goodger completed a treating source statement. AR 654-58. Dr. Goodger began treating Plaintiff on August 13, 2021, and he treated Plaintiff for five visits in one year. AR 654. Dr. Goodger opined that Plaintiff had several debilitating limitations including being limited to sitting for five hours per day, standing and walking for one hour per day, and needing unscheduled 15-minute breaks due to his OCD and fatigue. AR 656-57. Dr. Goodger

indicated that Plaintiff could never lift 20 or 50 pounds and could occasionally lift ten pounds or less. AR 657. Dr. Goodger identified that Plaintiff was using a bilevel positive airway pressure ("BiPAP") mask to treat his sleep apnea and paroxetine to treat his OCD. AR 656. Dr. Goodger opined that Plaintiff would be off task more than 25% of the workday and absent from work more than four days per month. AR 658. Dr. Goodger did not identify what medical findings or records support his opined limitations. *See* AR 654-58.

The ALJ found Dr. Goodger's opinion unpersuasive. AR 23. The ALJ reasoned that the opined limitations are not well supported, and that Dr. Goodger's opinion is inconsistent with Plaintiff's activities and Dr. Goodger's treatment notes showing that Plaintiff experienced good relief with treatment for both his obstructive sleep apnea and OCD symptoms. *Id.*

An ALJ may discount a medical source opinion if it is not supported by her treatment notes. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (stating that an ALJ may discount medical opinions that are "inadequately supported by clinical findings" (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002))); 20 C.F.R. § 404.1520c(c)(1) (including among the "supportability" factors "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)"). Here, the ALJ did not refer to any medical records to support his opined limitations, and the opined limitations are not adequately supported by the record.

Substantial evidence supports the ALJ's conclusion that Dr. Goodger's records do not contain clinical findings sufficient to support the severe limitations he opined. Dr. Goodger's treatment notes from 2021 and 2022 state that Plaintiff's OCD was manageable and that he exhibited "reasonable results on paroxetine." AR 646, 650. In 2021, Dr. Goodger described Plaintiff's OCD as "stable on medications." AR 662. Plaintiff's argument falls short given that

he does not point to any medical records or treatment notes that support Dr. Goodger's opined limitations. Instead, Plaintiff asserts that he has "good days" and "bad days" and reiterates what Dr. Goodger stated in the treating source statement.

The ALJ also found that Dr. Goodger's opinion was inconsistent with other evidence in the record. The ALJ noted that Dr. Goodger's opinion was inconsistent with Plaintiff's activities, including Plaintiff's self-reported ability to do yardwork, cut grass, perform household chores, and assist his mother with getting up when she falls. AR 23. The Court agrees that Plaintiff being able to lift his mother up is directly inconsistent with Dr. Goodger's opinion that Plaintiff could never lift more than 20 pounds. AR 657.

Regarding Plaintiff's sleep apnea, the ALJ discussed how Plaintiff had more than one referral for a sleep study before undergoing a sleep study in 2022, which confirmed sleep apnea. AR 21 (citing AR 617, 630, 659-662). In 2022, after his sleep study, Plaintiff reported notable improvement and stated he felt "quite a bit more rested" when he used a continuous positive airway pressure ("CPAP") machine. AR 631. However, Plaintiff was noncompliant with his CPAP treatment, and he had to return the CPAP machine to the vendor. *Id.* A subsequent sleep study noted that a BiPAP machine "satisfactorily suppressed" his sleep apnea. AR 643. Plaintiff also testified that he is currently using a BiPAP machine and that he felt it had "helped with [his] sleep." AR 46-47. On this record, the ALJ provided sufficient reasons supported by substantial evidence for discounting Dr. Goodger's opinion.

## C.  Plaintiff's Testimony

### 1.  Legal Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In making his finding, the ALJ offered the boiler plate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 20-21. The ALJ then explained that he discounted Plaintiff's testimony because of his noncompliance and failure to pursue treatment, and that the objective medical evidence paired with his activities of daily living failed to support his alleged limitations. AR 20-23. The Court addresses each aspect of the ALJ's analysis.

### 2. Plaintiff's Testimony

In his function report, Plaintiff stated that he has "good days" and "bad days" with his OCD. AR 339. Plaintiff explained that his activities varied based on his symptoms. AR 340. He explained that "there were times [his] mental illness kept [him] from work" and he "used [his] 'sick leave,' because [he] didn't want to use [his] OCD as an excuse." AR 339. At the hearing, Plaintiff described himself as "self-employed" and explained that he helps his elderly mother take care of things around the house and is paid $20.00 a week, as well as a room in her house rent-free. AR 39, 41. He testified that his duties included some housekeeping, feeding the dogs, and running errands for his mother. AR 40. Plaintiff stated he mows the lawn and weeds but explained that they had to hire landscapers for heavier tasks. AR 45-46. Plaintiff testified that he last worked in 2018 and was let go "partly due to fatigue" and his absenteeism. AR 41, 43, 49. In 2016, he reduced his hours and worked part-time because of his fatigue and desire to be in a different role. AR 47-48. Plaintiff explained that when he worked full time, he needed to nap in his car during his hour-long lunch break. AR 48.

### 3. ALJ's Analysis

#### a. Activities of daily living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050

The ALJ acknowledged Plaintiff's reported difficulty moving around, but reasoned that Plaintiff testified to performing daily activities consistent with an ability to perform a range of light work. AR 22. These self-reported activities include partaking in yardwork, cutting grass, performing household chores, and assisting his mother with getting up when she falls. *Id.*

Plaintiff argues that these activities are not easily transferable a "more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Plaintiff also asserts that his activity level varied each day depending on the severity of his OCD symptoms and his ability to take naps during the day. The ALJ, however,

identified specific activities that contrasted with Plaintiff's claimed limitations, those of which were unrelated to his OCD symptoms, and provided substantial evidence in support of his conclusion. AR 22. This included Plaintiff's claimed limitation on mobility  contrasted with his daily activities of performing household chores and yardwork. *Id.* So long as the ALJ's interpretation is rational, even assuming Plaintiff offers a competing rational interpretation, the Court affirms the ALJ's interpretation. *Burch*, 400 F.3d at 679. Therefore, the ALJ did not err in concluding Plaintiff's daily activities conflicted with his symptom testimony and this is a clear and convincing reason to discount his subjective symptom testimony.

**b. Noncompliance and Failure to Seek Treatment**

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 416.930(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 416.930(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may

not comply with treatment or seek treatment consistent with the degree of his or her complaints").

Additionally, a claimant's improvement with treatment "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. § 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

As already discussed, the ALJ reasoned that Plaintiff's statements describing excessive daytime sleepiness due to sleep apnea are inconsistent with the medical record which shows that his symptoms notably improved with CPAP and BiPAP therapy, when he was compliant with treatment. AR 22(citing 464, 493-94, 631).

As for Plaintiff's OCD symptoms, the ALJ discussed that Plaintiff had longstanding symptoms from OCD. *See, e.g.*, AR 22 (citing AR 463). The ALJ explained, however, that "[s]ince then, multiple notes describe the claimant as receivingfair to good results and relief in his symptoms with paroxetine." AR 22 (citing AR 463, 474, 659-62). He described that Plaintiff sought treatment at the Eugene Center for Anxiety and Stress based on his attorney's advice and treatment was terminated one month later because Plaintiff could not identify any treatment goals. *Id.* (citing 487-88, 506). Much like the ALJ's analysis of the medical opinion evidence, the ALJ discussed how Plaintiff's OCD was well managed. It was therefore reasonable for the ALJ

to discount Plaintiff's subjective symptom testimony based on his failure to follow treatment for his sleep apnea, and his improvement with conservative treatment.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Plaintiff asserts that the ALJ failed to evaluate the full adjudicatory period and instead emphasized the findings after the CPAP trial in 2022. As discussed above, however, the ALJ noted that Plaintiff previously was referred to sleep studies before he actually pursued treatment in 2022 with the CPAP trial. *See* AR 21. The ALJ also discussed the objective medical evidence from Plaintiff's alleged onset date through the date of the decisions, including sleep studies and mental status examinations, and concluded that Plaintiff's testimony was not supported by the record. AR 20-23. This was relevant evidence the ALJ could consider in discounting Plaintiff's testimony. Additionally, Plaintiff does not cite objective medical evidence that supports his allegations. The ALJ did not err in considering the objective medical evidence.

### CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 10th day of February, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge